Timothy W. Emery, UT Bar No. 12318
**EMERY REDDY, PC**
600 Stewart St. Ste 1100
Seattle, WA 98101
Telephone: (206) 442-9106
Facsimile: (206) 441-9711
emeryt@emeryreddy.com

*Counsel for Representative Plaintiff and the Proposed Class(es)*

[additional counsel listed on signature block]

## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| BARNEY HAYNES III, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LEAVITT GROUP ENTERPRISES, INC., AND LGAA, LLC,<br><br>Defendants. | Case No.: 4:25-cv-142<br><br><br><br><br><br><br>**DEMAND FOR A JURY TRIAL** |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Barney Haynes III ("Plaintiff") brings this Class Action Complaint against Defendants Leavitt Group Enterprises, Inc. ("Leavitt" or "Leavitt Group") and LGAA, LLC ("LGAA") (Leavitt and LGAA collectively as "Defendants") individually and on behalf of all others similarly situated, and alleges, upon personal knowledge as to his own actions and his counsel's investigation, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this Complaint against Defendants for their failure to properly secure and safeguard the sensitive personally identifiable information that it collected and maintained as part of its regular business practices, including Plaintiff's and Class Members' names, Social Security numbers, and financial account numbers (collectively defined herein as "PII" or "Private Information").[1]

2.      Defendants' failure to secure and safeguard the Private Information of Plaintiff and Class Members resulted in the exposure of the Private Information in a data breach on February 20, 2025 (the "Data Breach").[2]

3.      Defendant LGAA provides a variety of enterprise services for the Leavitt Group and its associated agencies, including data hosting services, automation, training, payroll, accounting, and website services.[3] In addition, Defendant LGAA owns or operates facilities to assist member agencies in placing insurance coverage on behalf of clients.[4]

4.      Defendant Leavitt Group is one of the largest associations of private insurance brokerages in the United States.[5]

_____

[1] *See* Data Breach Notification Letter attached to Complaint as Exhibit A
[2] *Id.*
[3] *See generally* LinkedIn "*Leavitt Group – Who Are We*?" https://www.linkedin.com/pulse/leavitt-group-who-we-caylor-dalley/ (last visited December 11, 2025).
[4] *Id.*
[5] *Id.*

EMERY | REDDY, PC
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

5.      On or about October 27, 2025, Defendants determined that Plaintiff's and Class Members Private Information was exposed in the Data Breach.[6]

6.      On or about November 7, 2025, Defendant LGAA began sending out notice letters (the "Notice") to impacted individuals notifying them of the Data Breach.[7]

7.      Defendant's investigation of the Data Breach determined that the Private Information compromised in the Data Breach included individuals' names, Social Security numbers, and financial account numbers.[8]

8.      Defendants owed Plaintiff and Class Members a duty to take all reasonable and necessary measures to keep the Private Information it collected, maintained, or otherwise had custody of, safe and secure from unauthorized access.

9.      By obtaining, collecting, using, and deriving a benefit from the Private Information of Plaintiff and Class Members, Defendant assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion.

10.     By directly or indirectly obtaining, soliciting, collecting, using, and/or deriving a benefit from the Private Information of Plaintiff and Class Members, Defendant assumed legal and equitable duties to those individuals to protect and safeguard that information it collected, maintained, or otherwise had custody of from unauthorized access and intrusion.

11.     Defendants failed to implement, maintain, monitor, train, or otherwise deploy adequate security practices to keep Plaintiff and Class Members Private Information safe and secure, leading to the Data Breach.

12.     Defendants owed Plaintiff and Class Members a duty to take all reasonable and necessary measures to keep the Private Information it collected, maintained, or otherwise had custody of, safe and secure from unauthorized access. Defendants indirectly and directly solicited, collected,

---

[6] *Supra* n1.
[7] *Id*.
[8] *Id.*

**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

used, and derived a benefit from the Private Information of Plaintiff and Class Members, yet breached its duty by failing to implement or maintain adequate security practices to protect that Private Information.

13.    Defendant admits that information in its network was accessed by unauthorized individuals, though it provided little information regarding how the Data Breach occurred.

14.    Upon information and belief, Plaintiff's Private Information is available on the Dark Web as a result of the Data Breach.

15.    Defendants, despite having the financial wherewithal, personnel, and resources necessary to prevent the Data Breach, nevertheless failed to use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it maintained for Plaintiff and Class Members, causing the exposure of Plaintiff's and Class Members' Private Information.

16.    The exposure of Private Information to unauthorized threat actors leaves Plaintiff and Class Members vulnerable to identity theft, financial crimes, and other forms of harm. Such information is of high value to cybercriminals and can be misused for years after initial compromise.

17.    The risks resulting from Defendants' misconduct are ongoing. Plaintiff and Class Members remain at substantial and continuing risk of identity theft, financial loss, and loss of privacy as a result of the Data Breach.

18.    Plaintiff seeks damages, injunctive and equitable relief, attorneys' fees, costs, and expenses on behalf of himself and all similarly situated individuals whose Private Information was compromised due to Defendants' conduct.

19.    Accordingly, Plaintiff asserts the following causes of action: (i) Negligence' (ii) Negligence Per Se;  (iii) Breach of Implied Contract; (iv) Unjust Enrichment.

## **PARTIES**

20.    Plaintiff Barney Haynes III is a resident and citizen of North Carolina.

**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

21.    Defendant Leavitt Group Enterprises, Inc. is a Nevada Corporation with its headquarters and principal place of business at 136 W University Blvd, Cedar City, UT 84720.

22.    Defendant LGAA, Inc., is a Utah Limited Liability Company, located at 136 W University Blvd, Cedar City, UT 84720.

## JURISDICTION AND VENUE

23.    This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant, namely Plaintiff, a citizen of North Carolina.

24.    This Court has personal jurisdiction over Defendants because its principal place of business is in this District, Defendants regularly conduct business in this District, and the acts and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

25.    Venue is proper under 18 U.S.C § 1391(b)(1) because Defendants' principal places of business are in this District.

## COMMON FACTUAL ALLEGATIONS

**A.  Defendants Business**

26.    Defendant Leavitt Group is headquartered in Utah, and is one of the largest privately held insurance brokerages in the nation with a network of over eighty-five agencies and over two hundred eighty  locations across twenty eight states.[9]

---

[9] *See* Leavitt Group "*About Us*" https://www.leavitt.com/about (last visited December 15, 2025).

**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

27.    Defendant LGAA provides collective services to Leavitt Group agencies, such as IT, human resources, payroll, and sales management, and is collectively owned by Leavitt Group Agencies, with the Leavitt Group having principle operational responsibility for LGAA.[10]

28.    LGAA is governed by a Members Governing Committee; the majority of the representatives on that Committee are co-owners elected by their peers. is a financial services company that provides wealth management services, including financial planning and investment portfolio management.[11]

29.    Upon information and belief, Defendants made promises and representations to individuals, including Plaintiff and Class Members, and/or their agents and fiduciaries that the Private Information collected from them would be kept safe and confidential, and that the privacy of that information would be maintained.[12]

30.    Plaintiff and Class Members directly or indirectly provided their Private Information to Defendants with the reasonable expectation and mutual understanding that Defendants would comply with their obligations to keep such information safe, confidential, and secure from unauthorized access.

31.    Upon information and belief, in the course of collecting Private Information from or about Plaintiff and Class Members, Defendant promised to provide confidentiality and adequate security for the data it collected from Plaintiff and Class Members through its applicable privacy policy and through other disclosures in compliance with statutory privacy requirements.[13]

32.    As a result of collecting and storing the Private Information of Plaintiff and Class Members for its own financial benefit, Defendants had a continuous duty to adopt and employy

---

[10] *Supra* n2.
[11] *Id.*
[12] *See* Leavitt Group – Legal Information "*Privacy Policy*" https://www.leavitt.com/lg/legal  (last visited December 15, 2025).
[13] *Id.*

EMERY | REDDY, PC
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

reasonable measures to protect Plaintiff's and the Class Members' Private Information from disclosure to third parties.

33.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendants assumed legal and equitable duties, and knew or should have known that they were responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure.

34.     Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information.

35.     Plaintiff and Class Members directly or indirectly relied on Defendants to implement and follow adequate data security policies and protocols, to keep their Private Information safe and secure, to use the respective Private Information solely for business purposes, and to prevent the unauthorized disclosures of the Private Information.

## B. The Data Breach

36.     On February 20, 2025, LGAA identified "unusual activity" on its computer network.[14]

37.     Upon identification of the unusual activity, LGAA initiated an investigation and identified that "an unknown cyber actor" accessed LGAA's computer network and may have "copied files without permission".[15]

38.     Following a determination that an unauthorized party accessed files containing Plaintiff's and Class Members' Private Information, LGAA conducted a review of the impacted files to determine "what information was contained in them, and to whom the information related". [16]

---

[14] *Supra* n1.
[15] *Id.*
[16] *Id*.

EMERY | REDDY, PC
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

39.     The review was completed on October 27, 2025, over eight months following the initial detection of the Data Breach, and identified [uniquely to Plaintiff Haynes] that names, Social Security numbers, and financial account numbers were impacted in the Data Breach. [17]

40.     On or around November 7, 2025, LGAA began sending notice letters ("Notice") to impacted individuals informing them of the Data Breach. The notice contained the following:

> **What Happened.** On February 20, 2025, our security tools identified unusual activity on a limited portion of our computer network that was used for data migrations. After the activity was identified, it was remediated, and we began an investigation to determine what occurred. We subsequently learned that an unknown cyber actor accessed this limited segment of the computer network on February 20 and may have copied files without permission. After identifying the potential files involved, we completed a comprehensive review of the files to determine what information was contained in them, and to whom the information related. This review was necessary to permit us to identify and notify individuals about this matter. The review with respect to your information was complete on October 27, 2025.
>
> **What Information Was Involved?** The files reviewed in this matter contained your name and Social Security number, and financial account information.[18]

41.     Defendants' Notice is problematic on several fronts and exacerbates the negative circumstances for victims of the Data Breach due, in part to the following failures: (1) the Notice fails to provide an indication as to why Defendants' had Plaintiff's and Class Members' Private Information, nor an indication of the original source the Defendant's obtained the Private Information; (2) Defendant fails to state whether it was able to contain or end the cybersecurity threat, leaving victims to fear whether the Private Information that Defendants continues to maintain is secure; (3) Defendant fails to state how the Breach itself occurred; (4) Defendant fails to state if it hired an expert

---

[17] *Id.*
[18] *Id.*

**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

cybersecurity forensics investigator to evaluate the scope, nature, and extent of the Data Breach; (5) Defendant failed to notify victims until over eight months after the Breach occurred, depriving victims of the earliest opportunity to take preventative measures to protect their Private Information. All of this information is vital to victims of a data breach, let alone a data breach of this magnitude, due to the sensitivity and wide array of information compromised in this specific breach.

42.     Notwithstanding the lack of necessary and critical information in Defendant's Notice, some key facts are identified, including: a) that this Data Breach was the work of cybercriminals; b) that the cybercriminals first infiltrated Defendants' networks and systems, and downloaded data from the networks and systems (aka exfiltrated data); c) that once inside Defendants' networks and systems, the cybercriminals targeted information including Plaintiff's and Class Members' Private Information and other sensitive information for download and theft.

43.      Moreover, in its Notice, Defendant failed to specify whether it undertook any efforts to contact the Class Members whose data was accessed and acquired in the Data Breach to inquire whether any of the Class Members suffered misuse of their data, whether Class Members should report their misuse to Defendant, and whether Defendant set up any mechanism for Class Members to report any misuse of their data. By collecting, storing, and processing this Private Information, Defendants assumed a duty to adequately protect it from unauthorized access and disclosure.

44.     Furthermore, Defendant's delay in notifying Plaintiff and Class Members of the Data Breach is in direct violation of Defendant's responsibilities under the data breach notification statute in Utah, which requires that the disclosure notification be made "in the most expedient time possible without unreasonable delay." *See* Utah Code § 13-44-202(2).[19]

45.     Defendant failed to take precautions designed to keep individuals' Private Information secure.

---

[19] Referred to collectively as the Utah Protection of Personal Information Act ("UPPIA").

EMERY | REDDY, PC
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

46.    While Defendant sought to minimize the damage caused by the Data Breach, it cannot and has not denied that there was unauthorized access to the sensitive Private Information of Plaintiff and Class Members.

47.    Individuals affected by the Data Breach are, and remain, at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future.

48.    Plaintiff further believes that the Private Information of Class Members was subsequently sold on the dark web following the Data Breach, as that is the modus operandi of cybercriminals that commit cyber-attacks of this type.

49.    Defendants had obligations created by contract, industry standards, statutory and common law, and their own promises and representations made directly or indirectly to Plaintiff and Class Members and/or their agents and fiduciaries, to keep their Private Information confidential, and to protect it from unauthorized access and disclosure.

50.    Plaintiff and Class Members reasonably relied on Defendants' sophistication to keep their sensitive Private Information confidential, to maintain adequate network security, to use the information for business purposes only, and to make only authorized disclosures of their Personal Information.

51.    Defendants' data security obligations were particularly important given the substantial increase in cyberattacks and data breaches of major companies preceding the date of the Data Breach.

52.    Defendants knew or should have known that these attacks were common and foreseeable. In 2024, there were 2,850 data breaches, a significant increase above the prior record set in 2021, wherein 1,862 data breaches occurred. Of the 2,850 data breaches, there were approximately 1,246,573,396 victim notices issued, a 211 percent increase from 2023.

53.    Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets, so they are aware of and prepared for a potential attack. As one report explained, "[e]ntities like smaller municipalities . . . are

EMERY | REDDY, PC
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."

54.    The increase in such attacks, and the resulting risk of future attacks, was widely known to the public and to anyone in the Defendants' industry, including Defendants.

**C.    Defendants Did Not Use Reasonable Security Procedures**

55.    Despite this knowledge, Defendants did not use reasonable security procedures and practices appropriate to the nature of the sensitive, non-encrypted, and non-redacted information they were maintaining for Plaintiff and Class Members, causing Plaintiff's and Class Members' Private Information to be exposed.

56.    To prevent and detect cyber-attacks, Defendants could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls, including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have written access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full Office Suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or

**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

compression/decompression        programs,        including        the
AppData/LocalAppData folder.

- Consider disabling the Remote Desktop Protocol (RDP) if it is not being used.
- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.
- Execute operating system environments or specific programs in a virtualized environment.
- Categorize data based on organizational value and implement physical and logical separation of networks and data for different o logical separation of networks and data for different organizational units.[20]

57.      To prevent and detect cyber-attacks, Defendants could and should have implemented the following measures, as recommended by the United States Cybersecurity & Infrastructure Agency:

- **Update and patch your computer**. Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks.

- **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters and keep them updated to reduce malicious network traffic.[21]

58.      To prevent and detect cyber-attacks, Defendants could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**
-       Apply the latest security updates

---

[20] *Protecting Personal Information: A Guide for Business, Federal Trade Commission* (2016). Available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.
[21] *See* Cybersecurity & Infrastructure Security Agency, *Protecting Against Ransomware* (Apr. 11, 2019), https://www.cisa.gov/news-events/news/protecting-against-ransomware (last visited December 15, 2025).

EMERY | REDDY, PC
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

-     Use threat and vulnerability management
-     Perform regular audit
-     Remove privileged credentials

**Thoroughly investigate and remediate alerts**
-     Prioritize and treat commodity malware infections as potential full compromise.

**Include IT Professionals s in security discussions**
-     Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely.

**Build credential hygiene**
-     Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords.

**Apply principle of least-privilege**
-     Monitor for adversarial activities
-     Hunt for brute force attempts
-     Monitor for cleanup of Event Logs
-     Analyze logon events

**Harden infrastructure**
-     Use Windows Defender Firewall
-     Enable tamper protection
-     Enable cloud-delivered protection
-     Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[22]

59.    Given that Defendants were storing the Private Information of Plaintiff and Class Members, Defendants could and should have implemented all the above measures to prevent and detect cyber-attacks.

60.    The occurrence of the Data Breach indicates that Defendants failed to adequately implement one or more of the above measures to prevent "hacking" attacks, resulting in the Data

---

[22] *See* Microsoft Threat Intelligence, *Human-operated ransomware attacks: A preventable disaster* (Mar. 5, 2020), https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last visited December 15, 2025).

**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

Breach and the exposure of the Private Information of an undisclosed number of individuals, including Plaintiff and Class Members.

61.    Instead, upon information and belief Defendants failed to use reasonable security practices and did not encrypt or securely store Private Information, nor did they ensure the removal of unnecessary or outdated files from their systems.

**D.    Securing Private Information and Preventing Data Breaches**

62.    Defendants breached their obligations to Plaintiff and Class Members and/or were otherwise negligent and reckless because they failed to properly maintain and safeguard their computer systems and data. Defendants' unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a.    Failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b.    Failing to adequately protect Plaintiff's and Class Members' Private Information;

c.    Failing to properly monitor their own data security systems for existing intrusions; and

d.    Failing to adhere to industry standards for cybersecurity.

63.    Defendants could have prevented this Data Breach by properly securing and encrypting the Private Information of Plaintiff and Class Members. Alternatively, Defendants should have implemented and executed proper data disposal protocols to ensure that any data that was no longer necessary or outdated was removed and destroyed.

64.    Defendants' negligence in safeguarding the Private Information of Plaintiff and Class Members was exacerbated by the repeated warnings and alerts directed to governments and businesses to protect and secure sensitive data.

65.    Despite the prevalence of public announcements of data breaches and data security compromises, Defendants failed to take appropriate steps to protect the Private Information of Plaintiff and Class Members from being compromised.

**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

66.     Despite common industry awareness, and data breach reporting requirements in applicable laws and regulations regarding the need for timely and sufficient notice, Defendants' took  over eight months to communicate the existence of the Data Breach to impacted individuals, basically removing any opportunity for the Plaintiff and Class Members to take recommended steps for persons impacted by a data breach.

**E.     Defendants Failed to Comply with FTC Guidelines**

67.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

68.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[23]  The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[24]

69.     The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for

---

[23]  Federal Trade Commission, *Protecting Personal Information: A Guide for Business* (2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited December 15, 2025).
[24] *Id*.

EMERY | REDDY, PC
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

70.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

71.    Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

72.    Defendants were always fully aware of their obligation to protect the Private Information of Plaintiff and Class Members. Defendants were also aware of the significant repercussions that would result from their failure to do so.

## F.    Defendants Failed to Comply with Industry Standards

73.    Several best practices have been identified that, at a minimum, should be implemented by entities like Defendants, including but not limited to, educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backing up data; and limiting which employees can access sensitive data. Defendants failed to follow these industry-best practices.

74.    Other best cybersecurity practices include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding critical points. Defendants failed to follow these cybersecurity best practices, including failing to train their staff.

EMERY | REDDY, PC
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

75.    Defendants failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

## G.    Value of Personally Identifiable Information

76.    The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[25]  The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government-issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." [26]

77.    The Private Information of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, Private Information can be sold at a price ranging from as low as  $1 to beyond $4,000, and bank details have a price range of $30 to $4,255.[27]  Experian reports that a stolen credit or debit card number can sell for $10 to $240 on the

---

[25] 17 C.F.R. § 248.201(b)(8).
[26] *Id.*
[27] *See Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, June 30, 2025), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited December 15, 2025).

**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

dark web.[28]   Criminals can also purchase access to entire company data breaches from $900 to $4,500.[29]

78.    Social Security numbers, for example, are among the worst kind of PI to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[30]

79.    Moreover, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

80.    Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[31]

---

[28] *Id.*

[29] *See In the Dark*, VPNOverview (2019), https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited December 15, 2025).

[30] Social Security Administration, *Identity Theft and Your Social Security Number*, https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited December 15, 2025).

[31] *See* Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (last visited December 15, 2025).

EMERY | REDDY, PC
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

81.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x in price on the black market."[32]

82.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—Social Security number, Driver's License number, and tax information.

83.     Among other forms of fraud, identity thieves may use Social Security numbers to obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

84.     Moreover, the fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and between when PI is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[33]

---

[32] *See Tim Greene, Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited December 15, 2025).

[33] *See* Government Accountability Office, *Report to Congressional Requesters*, at 29 (June 2007), https://www.gao.gov/assets/gao-07-737.pdf (last visited December 15, 2025).

EMERY | REDDY, PC
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

85.    The Private Information stolen in the Data Breach has significant value, as PII is a valuable property right.[34]    Sensitive PII can sell for as much as $363 per record, according to the Infosec Institute.[35]

86.    There is also an active, robust, and legitimate marketplace for PI. In 2019, the data brokering industry was worth roughly $200 billion.  In fact, the data marketplace is so sophisticated that consumers can sell their non-public information directly to a data broker, who in turn aggregates the information and provides it to marketers or app developers.   Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $60.00 a year.

87.    As a result of the Data Breach, Plaintiff's and Class Members' PI, which has an inherent market value in both legitimate and black markets, has been damaged and diminished by its unauthorized release to third-party actors, to whom it holds significant value. However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is now readily available, and the rarity of Plaintiff's and Class Members' Private Information has been lost, thereby causing additional loss of value.

88.    At all relevant times, Defendants knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiff and Class Members, including names, driver's license numbers, Social Security numbers, and tax information, and of the foreseeable consequences that would occur if Defendants' data security systems and networks were breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

---

[34] *See, e.g.*, John T. Soma, et al., *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 RICH. J.L. & TECH. 11, at *3–4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets." (citations omitted)).
[35] *See* Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, INFOSEC (July 27, 2015), https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/ (last visited December 15, 2025).

EMERY | REDDY, PC
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

89.     Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Since the Data Breach, Plaintiff has experienced a significant uptick in spam calls, text messages, and emails. Beyond the stress and anxiety this situation has caused, Plaintiff has already devoted and anticipated continuing to devote countless hours to the vigilant monitoring of their identity and financial accounts to mitigate any potential harm. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

90.     Defendants were, or should have been, fully aware of the unique type and the significant volume of data on Defendants' server(s) and computer network, amounting to potentially tens of thousands of individuals' detailed PI, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

91.     The injuries to Plaintiff and Class Members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class Members, including, but not limited to, failing to encrypt Private Information, failing to redact sensitive Private Information, keeping unencrypted and unredacted sensitive Private Information in internet-facing environments, and failing to delete sensitive Private Information that the Defendants had no reasonable business purpose for continuing to maintain. The ramifications of Defendants' failure to safeguard the Private Information of Plaintiff and Class Members are long-lasting and severe. Once PI is stolen, fraudulent use of that information and damage to victims may continue for years.

## H.     Plaintiff's and Class Members' Damages

92.     Plaintiff and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

93.     On information and belief, Plaintiff's and Class Members' Private Information was compromised in the Data Breach and is now in the hands of cybercriminals who accessed the data

EMERY | REDDY, PC
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

Defendants held within their systems. The Private Information exposed included the individuals' first and last names in combination Social Security number, and various financial account numbers and information – although as noted previously, Defendants have not provided specific detail as to what financial account information was impacted.

94.    As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have been placed at a present, imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

95.    As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have been forced to expend time dealing with the effects of the Data Breach, valuable time Plaintiff and Class Members otherwise would have spent on other activities, including but not limited to work and/or recreation.

96.    Plaintiff and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

97.    Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class Members.

98.    Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

99.    Plaintiff and Class Members also suffered a loss of value of their Private Information when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

100.    Upon information and belief Plaintiff and Class Members were also damaged via benefit-of-the-bargain damages. Plaintiff and Class Members who are current or former customers

EMERY | REDDY, PC
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

of Defendants' associates, financial services providers and administrators, and other vendors, affiliates, and partners overpaid for a service that was intended to be accompanied by adequate data security that complied with industry standards.

101.    Part of the price Plaintiff and Class Members paid to Defendants' associates, financial services providers, administrators, and other vendors, affiliates, and partners was intended to be used by Defendants to fund adequate data security practices to safeguard Plaintiff's and Class Members' Private Information. As demonstrated by the Data Breach, Defendants failed to fund and provide adequate data security practices. Thus, Plaintiff and the Class Members who are current or former patients of Defendants' clients did not get what they paid for and agreed to.

102.    Plaintiff and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably spent to remedy or mitigate the effects of the Data Breach relating to:

    a.    Reviewing and monitoring sensitive accounts and finding fraudulent insurance claims, loans, and/or government benefits claims;

    b.    Purchasing credit monitoring and identity theft prevention;

    c.    Placing "freezes" and "alerts" with reporting agencies;

    d.    Spending time on the phone with or at financial institutions, healthcare providers, and/or government agencies to dispute unauthorized and fraudulent activity in their name;

    e.    Contacting financial institutions and closing or modifying financial accounts; and,

    f.    Closely reviewing and monitoring their medical insurance accounts, bank accounts, and credit reports, as well as alerts for identity fraud including their SSNs, for unauthorized activity for years to come.

103.    Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to remain in the possession of Defendants, is protected from further breaches by the implementation of security measures and safeguards, including but not

EMERY | REDDY, PC
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

limited to, making sure that the storage of data or documents containing Private Information is not accessible online or otherwise to unauthorized third parties.

104.    As a direct and proximate result of Defendants' actions and omissions, Plaintiff and Class Members have suffered anxiety, emotional distress, and loss of privacy, and are at an increased risk of future harm.

## 1.    PLAINTIFF BARNEY HAYNES III EXPERIENCE

105.    Plaintiff Barney Haynes III is, and at all relevant times has been, a resident and citizen of North Carolina.

106.    In providing his Private Information directly or indirectly to Defendants, Plaintiff Haynes trusted that Defendants would use reasonable measures to protect it according to Defendant's internal policies, as well as state and federal law.

107.    Plaintiff Haynes is very careful about storing and sharing his Private Information.

108.    Plaintiff Haynes first learned of the Data Breach after receiving a data breach notification letter, informing him that his Private Information was involved in the Data Breach. Prior to receiving the letter, he had not been aware of Defendants, nor that his Private Information had been shared with Defendants.

109.    Due in part to the lack of detail in the data breach notification letter, Plaintiff Haynes was required to make specific inquiry of Defendants as to their business practices and how and from whom they had obtained Plaintiff's Private Information.

110.    On information and belief on or about November 11, 2025, following numerous calls to the Data Breach information line identified in the Notice, Plaintiff Haynes called Leavitt Group and was ultimately connected with someone who identified themselves as Leavitt Group's Chief Operating Officer ("COO").[36]

---

[36] The current Chief Operating Officer of LGAA and Leavitt Group is  Joe Callister. *See* https://www.leavitt.com/lg/about (last visited December 15, 2025).

EMERY | REDDY, PC
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

111.    On information and belief Plaintiff Haynes requested clarification as to why the notification to impacted individuals had taken so long (referring to the greater than eight month delay from detection of the data breach to notification) and expressed concerns as to how quickly information involved in a data breach can be disseminated and used to commit identity theft within a very short time period (Plaintiff noted 24 to 48 hours). In response, the self-identified COO noted they were unaware of the mechanisms of the Dark Web and that identity theft could occur so quickly following a data breach.

112.    Despite Plaintiff's proactive inquiries to parties that should have had, or represented themselves as having, additional information about the Data Breach, Plaintiff Haynes was unable to gain any additional information regarding how his Private Information ended up with Defendants and ultimately with cybercriminals.

113.    Upon information and good faith belief, Plaintiff's Private Information—including his name, Social Security number, and various financial account numbers and information had been improperly accessed or obtained by unauthorized third parties as a result of the Data Breach.

114.    Upon information and belief Plaintiff Haynes' Private Information has been found on the Dark Web.

115.    Since the Data Breach, Plaintiff Haynes has received a significant amount of suspicious spam emails, phone calls, and texts, including new or novel scam attempts.

116.    Plaintiff Haynes suffered actual injury from having his Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his Private Information, a form of property that Defendants maintained belonging to Plaintiff; (b) violation of his privacy rights; (c) the theft of his Private Information; and (d) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

117.    As a result of the Data Breach, Plaintiff Haynes has also suffered emotional distress as a result of the release of his Private Information, which he believed would be protected from

EMERY | REDDY, PC
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using his Private Information for purposes of identity theft and fraud. Plaintiff Haynes is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

118.    As a result of the Data Breach,  so far Plaintiff Haynes has been forced to spend over thirty hours dealing with and responding to the direct consequences of the Data Breach, and will continue to spend valuable time that otherwise would have been spent on other activities, including but not limited to work and/or recreation. This is uncompensated time that has been lost forever and cannot be recaptured.

119.    Due to the Data Breach, Plaintiff Haynes anticipates spending considerable additional time and money on an ongoing basis to mitigate and address the resulting harm, including monitoring his medical history, health insurance data, and financial accounts.

120.    Plaintiff Haynes has already experienced a sharp increase in spam calls and/or texts and phishing attempts.

121.    Plaintiff Haynes reasonably expected and understood that Defendants' as custodians of this Private Information, would take, at a minimum, industry-standard precautions to protect, maintain, and safeguard his Private Information from unauthorized use or disclosure, and would timely notify him of any related data security incidents.

122.    Plaintiff is very careful about sharing his sensitive PII. He has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source. He stores any documents containing sensitive information in a safe and secure location or destroys them. Moreover, he diligently chooses unique usernames and passwords for his online accounts.

123.    As a result of the Data Breach, Plaintiff Haynes made reasonable efforts to mitigate the impact, including researching the Data Breach, reviewing financial statements, monitoring his credit information, and changing account passwords.

**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

124.    Plaintiff is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from his Private Information being in unauthorized hands.

125.    Plaintiff has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in Defendants' possession, is protected and safeguarded from future breaches.

## CLASS ACTION ALLEGATIONS

126.    Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all others similarly situated.

The Class that Plaintiff seeks to represent is defined as follows:

> All individuals residing in the United States whose Private Information was accessed and/or acquired by an unauthorized party as a result of the Data Breach (the "Class").

127.    The following people are excluded from the Class: (i) any judge or magistrate presiding over this action and members of their families; (ii) Defendants, Defendants' subsidiaries, parents, successors, predecessors, affiliated entities, and any entity in which Defendants or their parents have a controlling interest, and their current or former officers and directors; (iii) persons who properly execute and file a timely request for exclusion from the Class; (iv) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (v) Plaintiff's counsel and Defendants' counsel; and (vi) the legal representatives, successors, and assigns of any such excluded persons.

128.    Numerosity: The exact number of members of the Class is unknown but, upon information and belief, it is estimated to number in the tens of thousands at this time, and individual joinder in this case is impracticable. Members of the Class can be easily identified through Defendants' records and objective criteria permitting self-identification in response to notice, and

EMERY | REDDY, PC
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

notice can be provided through techniques similar to those customarily used in other data breach, consumer breach of contract, unlawful trade practices, and class action controversies.

129.    <u>Typicality</u>: Plaintiff's claims are typical of the claims of other members of the Class in that Plaintiff, and the members of the Class, sustained damages arising out of Defendants' Data Breach, wrongful conduct and misrepresentations, false statements, concealment, and unlawful practices, and Plaintiff and members of the Class sustained similar injuries and damages, as a result of Defendants' uniform illegal conduct.

130.    <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Class. Plaintiff has no interests that conflict with, or are antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

131.    <u>Commonality and Predominance</u>: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

   a. Whether Defendants violated the laws asserted herein, including statutory privacy laws;

   b. Whether Defendants had a duty to use reasonable care to safeguard Plaintiff's and Class Members' Private Information;

   c. Whether Defendants breached the duty to use reasonable care to safeguard Plaintiff's and Class Members' Private Information;

   d. Whether Defendants breached their contractual promises to safeguard Plaintiff's and Class Members' Private Information;

   e. Whether Defendants knew or should have known about the inadequacies of their data security policies and system and the dangers associated with storing Private Information;

   f. Whether Defendants failed to use reasonable care and commercially reasonable methods to safeguard and protect Plaintiff's and Class Members' Private Information from unauthorized release and disclosure;

   g. Whether the proper data security measures, policies, procedures, and protocols were in place and operational within any Defendants' computer systems to

EMERY | REDDY, PC
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

safeguard and protect Plaintiff's and Class Members' Private Information from unauthorized release and disclosure;

h.  Whether Defendants took reasonable measures to determine the extent of the Data Breach after it was discovered;

i.  Whether any Defendants' method of informing Plaintiff and other members of the Class was unreasonable;

j.  Whether Defendants' conduct was likely to deceive the public;

k.  Whether Defendants are liable for negligence or gross negligence;

l.  Whether Defendants' conduct, practices, statements, and representations about the Data Breach of the Private Information violated applicable state laws;

m.  Whether Plaintiff and Class Members were injured as a proximate cause or result of the Data Breach;

n.  Whether Plaintiff and members of the Class were damaged as a proximate cause of the Data Breach;

o.  Whether Defendants' practices and representations related to the Data Breach breached implied contracts with Plaintiff and members of the Class;

p.  What the proper measure of damages is; and

q.  Whether Plaintiff and members of the Class are entitled to restitutionary, injunctive, declaratory, or other relief.

132.  <u>Superiority</u>: This cause is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision

**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions ensured.

133.    A class action is superior to individual litigation because:

a.  The amount of damages available to an individual plaintiff is insufficient to make litigation addressing Defendants' conduct economically feasible in the absence of the class action procedural device;

b.  Individualized litigation would present a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system; and

c.  The class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

134.    Likewise, particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.  Whether Defendants failed to timely and adequately notify the public of the Data Breach;

b.  Whether Defendants owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

c.  Whether Defendants' security measures to protect data systems were reasonable in light of best practices recommended by data security experts;

d.  Whether Defendants' failure to institute adequate protective security measures amounted to negligence;

e.  Whether Defendants failed to take commercially reasonable steps to safeguard consumer Private Information; and

f.  Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

135.    Finally, all members of the proposed Class are readily ascertainable. Defendants have access to Class Members' names and addresses affected by the Data Breach.

## CAUSES OF ACTION

### COUNT I
#### NEGLIGENCE

EMERY | REDDY, PC
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

***(On Behalf of Plaintiff & the Class)***

136.    Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

137.    Defendants collected and transferred Private Information of Plaintiff and Class Members and had a corresponding duty to protect such information from unauthorized access.

138.    Defendants failed to inform Plaintiff and the Class Members that their systems were inadequate to safeguard sensitive information, and that transferring Private Information could lead to attackers gaining access to their sensitive information.

139.    The sensitive nature of the Private Information and economic value of it to hackers necessitated security practices and procedures sufficient to prevent unauthorized access to the Private Information.

140.    Defendants failed to implement and maintain adequate security practices and procedures to prevent the Data Breach.

141.    It was reasonably foreseeable to Defendants that their failure to implement and maintain reasonable security procedures and practices would leave the sensitive information in their systems vulnerable to breach and could thus expose the owners of that information to harm.

142.    Furthermore, given the known risk of major data breaches, Plaintiff and the Class Members are part of a well-defined, foreseeable, finite, and discernible group that was at high risk of having their Private Information stolen.

143.    Defendants' duty of care arose as a result of their knowledge that individuals trusted them to protect the confidential data that they provided to them. Only the Defendants were in a position to ensure that their own protocols were sufficient to protect against the harm to Plaintiff and the Class from a data breach of their own systems.

144.    Defendants also had a duty to use reasonable care in protecting confidential data because they committed to comply with industry standards for the protection of Private

**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

Information and committed to the public to protect the privacy of information collected by, or provided to the Defendants.

145.    Defendants knew, or should have known, of the vulnerabilities in their security practices and procedures, and the importance of adequate security to the employees and the owners of sensitive data.

146.    Plaintiff and Class Members have suffered harm as a result of Defendants' negligence. These victims suffered diminished value of their Private Information. Plaintiff and Class Members also lost control over the Private Information exposed, which subjected each of them to a greatly enhanced risk of identity theft, credit and bank fraud, Social Security fraud, tax fraud, and myriad other types of fraud and theft, in addition to the time and expenses spent mitigating those injuries and preventing further injury.

**COUNT II**
**NEGLIGENCE PER SE**
***(On Behalf of Plaintiff & the Class)***

147.    Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

148.    Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by companies like Defendants of failing to use reasonable measures to protect PII.

149.    The FTC publications and orders also form the basis of Defendants' duty to the Class.

150.    Defendants violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with industry standards. Defendants' conduct was particularly unreasonable given the nature and amount of Private Information that they obtained and stored and the foreseeable consequences of a data breach of that data.

151.    Defendants' violation of Section 5 of the FTC Act constitutes negligence per se.

EMERY | REDDY, PC
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

152.    Plaintiff and Class Members are consumers within the class of persons Section 5 of the FTC Act was intended to protect.

153.    Moreover, the harm that has occurred is the type of harm the FTC Act was intended to guard against. Indeed, the FTC has pursued over 50 enforcement actions against businesses that, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and the Class.

154.    As a direct and proximate result of Defendants' negligence per se, Plaintiff and Class Members have been injured as described herein, and are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

## COUNT III
### BREACH OF IMPLIED CONTRACT
### *(On Behalf of Plaintiff & the Class)*

155.    Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

156.    Plaintiff incorporates by reference all foregoing factual allegations.

157.    Plaintiff and the Class Members, directly or indirectly provided their Private Information to Defendants as part of the process of obtaining goods and services.

158.    Upon providing their Private Information in exchange for receiving goods or services, Plaintiff and Class Members entered into implied contracts with Defendants under which Defendants agreed to safeguard and protect such information and to timely and accurately notify Plaintiff and Class Members if and when their data had been breached and compromised. Each such contractual relationship imposed on Defendants an implied covenant of good faith and fair dealing by which Defendants were required to perform their obligations and manage Plaintiff's and Class Members' Private Information in a manner which comported with the reasonable expectations of privacy and protection attendant to entrusting such data to Defendants.

EMERY | REDDY, PC
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

159.    In providing their Private Information, Plaintiff and Class Members entered into an implied contract with Defendants whereby Defendants, in receiving such data, became obligated to reasonably safeguard Plaintiff's and the other Class Members' Private Information.

160.    In delivering their Private Information directly or indirectly to Defendants, Plaintiff and Class Members intended and understood that Defendants would adequately safeguard that data.

161.    Plaintiff and the Class Members would not have entrusted their Private Information to Defendants in the absence of such an implied contract.

162.    Defendants accepted possession of Plaintiff's and Class Members' Private Information for the purpose of providing services to Plaintiff and Class Members.

163.    If Defendants had disclosed to Plaintiff and Class Members or their agents or fiduciaries that Defendants did not have adequate computer systems and security practices to secure their Private Information, Plaintiff and Class Members would not have provided their Private Information directly or indirectly to Defendants.

164.    Defendants recognized that Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiff and Class Members.

165.    Plaintiff and the Class fully performed their obligations under the implied contract with Defendants.

166.    Defendants breached the implied contract with Plaintiff and Class Members by failing to take reasonable measures to safeguard their data.

167.    As a direct and proximate result of the breach of the contractual duties, Plaintiff and Class Members have suffered actual, concrete, and imminent injuries. The injuries suffered by Plaintiff and the Class Members include: (a) invasion of privacy; (b) the compromise, disclosure, theft, and unauthorized use of Plaintiff's and Class Members' Private Information; (c) economic costs associated with the time spent to detect and prevent identity theft, including loss of

EMERY | REDDY, PC
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

productivity; (d) monetary costs associated with the detection and prevention of identity theft; (e) economic costs, including time and money, related to incidents of actual identity theft; (f) the emotional distress, fear, anxiety, nuisance and annoyance of dealing related to the theft and compromise of their Private Information; (g) the diminution in the value of the services bargained for as Plaintiff and Class Members were deprived of the data protection and security that Defendants promised or were otherwise obligated to provide when Plaintiff and the Class Members directly or indirectly entrusted Defendants with their Private Information; and (h) the continued and substantial risk to Plaintiff's and Class Members' Private Information, which remains in the Defendants' possession with inadequate measures to protect such Private Information.

## COUNT IV
### UNJUST ENRICHMENT
### *(On Behalf of Plaintiff & the Class)*

168.    Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

169.    This claim is pleaded solely in the alternative to Plaintiff's breach of implied contract claim.

170.    Plaintiff and Class Members conferred a monetary benefit on Defendants by directly or indirectly paying money for goods and/or services that relied on Defendants to render certain services, a portion of which was intended to have been used by Defendants for data security measures to secure Plaintiff's and Class Members' Private Information. Plaintiff and Class Members further conferred a benefit on Defendants by entrusting their Private Information to Defendants from which Defendants derived profits.

171.    Defendants enriched themselves by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendants instead calculated to avoid their data security obligations at the expense of Plaintiff

**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' failure to provide adequate security.

172.    Under the principles of equity and good conscience, Defendants should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendants failed to implement appropriate data management and security measures that are mandated by industry standards.

173.    Defendants acquired the monetary benefit, and Private Information through inequitable means in that Defendants failed to disclose the inadequate security practices, as described herein, and failed to maintain adequate data security.

174.    If Plaintiff and Class Members knew that Defendants had not secured their Private Information, they would not have agreed to give their money—or disclosed their data— to providers using Defendants' services.

175.    Plaintiff and Class Members have no adequate remedy at law.

176.    As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered—and will continue to suffer—a host of injuries, including but not limited to: (1) actual identity theft; (2) the loss of the opportunity to determine how their Private Information is used; (3) the compromise, publication, and/or theft of their Private Information; (4) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (5) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (6) the continued risk to their Private Information, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fails to undertake appropriate and adequate measures to protect the Private Information in their possession; and (7) future expenditures of time, effort, and money

EMERY | REDDY, PC
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

that will be spent trying to prevent, detect, contest, and repair the impact of Defendants' Data Breach.

177.    The benefits that Defendants derived from Plaintiff and Class Members rightly belong to Plaintiff and Class Members. It would be inequitable under unjust enrichment principles for Defendants to be permitted to retain any of the profit or other benefits it derived from the unfair and unconscionable methods, acts, and data security practices alleged in this Complaint.

178.    Defendants should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds they received as a result of their conduct and the Data Breach alleged herein.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff Barney Haynes III, on behalf of himself and all persons similarly situated, prays for judgment in favor of themselves against Defendants Leavitt Group Enterprises, Inc. and LGAA, LLC, and respectfully request that this Honorable Court enter an order:

A.    Certifying this action as a Class action and appointing Plaintiff as Class Representative and his counsel as Class Counsel;

B.    Granting equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' Private Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

C.    Granting equitable relief compelling Defendants to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of Private Information compromised during the Data Breach;

**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

D.      Granting equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendants' wrongful conduct;

E.      Requiring Defendants to pay for not less than three years of credit monitoring services for Plaintiff and the Class;

F.      Awarding actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

G.      Awarding punitive damages, as allowable by law;

H.      Awarding attorneys' fees and costs under the common fund doctrine, and any other applicable law;

I.      Awarding costs and any other expense, including expert witness fees, incurred by Plaintiff in connection with this action;

J.      Awarding pre- and post-judgment interest on any amounts awarded; and

K.      All such other and further relief as this court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: December 17, 2025                    Respectfully submitted,

                                            /s/  *Timothy W. Emery*
                                            Timothy W. Emery, UT Bar No. 12318
                                            M. Anderson Berry*
                                            Brook E. Garberding*
                                            Gregory Haroutunian*
                                            Brandon Jack*
                                            **EMERY REDDY, PC**
                                            600 Stewart Street, Suite 1100
                                            Seattle, WA 98101
                                            Tel: (206) 442-9106
                                            Fax: (206) 441-9711
                                            Email: emeryt@emeryreddy.com

Email: anderson@emeryreddy.com
Email: brook@emeryreddy.com
Email: gregory@emeryreddy.com
Email: brandon@emeryreddy.com

*Pro hac vice* applications forthcoming


*Attorneys for Plaintiff and the Proposed Class*

**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100 Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711